IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JASMIN DAVIS and BARRY WILSON,<br><br>Plaintiffs,<br><br>v.<br><br>THE STATE OF UTAH, THE UNIVERSITY OF UTAH, and Individuals, STEPHEN HESS, STEPHEN CORBATO, LISA KUHN, MICHAEL EKSTROM, CAPRICE POST, JIM LIVINGSTON, JOHN NIXON and JEFF HERRING, sued individually and in their official capacities,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT<br><br><br>Case No. 2:18-CV-926 TS-PMW<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendants' Motion to Dismiss and Plaintiffs' Motion for Leave to File Third Amended Complaint. For the reasons discussed below, the Court will grant the Motion to Dismiss, but will allow amendment of Plaintiffs' free speech claim, and will deny the Motion for Leave to Amend.

I. BACKGROUND

Plaintiffs Jasmin Davis and Barry Wilson are former employees of the University of Utah. Plaintiffs claim they were improperly terminated as a result of whistleblowing activities. They bring a number of claims, including claims under the Utah Protection of Public Employees Act ("UPPEA"), breach of contract and related claims, and violations of the First and Fourteenth Amendments. Defendants seek dismissal of all claims.

1

## II. MOTION TO DISMISS STANDARD

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiffs as the nonmoving party.[1] Plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face,"[2] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[3] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[4]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[5] As the Court in *Iqbal* stated,

> [o]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[6]

---

[1] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[5] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[6] *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).

In considering a motion to dismiss, a district court not only considers the complaint, "but also the attached exhibits,"[7] the "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[8] The Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[9]

### III. DISCUSSION

A.     STATE OF UTAH

Plaintiffs assert claims against the State of Utah. However, there are no allegations that the State played any role in the alleged wrongful conduct. Rather, all of Plaintiffs' allegations are directed at the University of Utah and the individual Defendants. As a result, the State seeks dismissal. Plaintiffs have failed to respond to this argument. With no allegations against it and no argument in support of its inclusion in this action, dismissal of the State is appropriate.

B.     UPPEA

Plaintiff Davis asserts a claim under the UPPEA. Defendants contend that her claim is untimely.

Davis was terminated on September 22, 2015. The version of the UPPEA in effect at the time of her termination provided that, in most instances, "an employee who alleges a violation of this chapter may bring a civil action for appropriate injunctive relief, damages, or both, within

---

[7] *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[8] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[9] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

3

180 days after the occurrence of the alleged violation of this chapter."[10] It is undisputed that Plaintiff did not bring this action within 180 days of her termination.

Plaintiff nonetheless argues that this action is timely. Plaintiff relies on Utah Code Ann. § 67-21-4(b)(ii), which provides an exception to the 180-day filing requirement in certain circumstances. That provision states:

> An employee of a state institution of higher education that has adopted a policy described in Section 67-21-3.7:
> (A) may bring a civil action described in Subsection (1)(a) within 180 days after the day on which the employee has exhausted administrative remedies; and
> (B) may not bring a civil action described in Subsection (1)(a) until the employee has exhausted administrative remedies.[11]

Here, there are no allegations that the University had "adopted a policy described in Section 67-21-3.7" and Defendants affirmatively state the University had not adopted such a policy. Thus, Plaintiff cannot rely on this provision and she was required to commence this action within 180 days from the date of her termination. Plaintiff's argument that the statute of limitations was tolled while she pursued various administrative processes is unavailing.

Plaintiff further argues that, under the Governmental Immunity Act ("GIA"), she was required to file a notice of claim and that she filed this action within 180 days of her claim being denied. The Utah Court of Appeals addressed the interplay of the UPPEA and the GIA in *Thorpe v. Washington City*.[12] Reading the statutes together, the court held that a plaintiff asserting a claim under the UPPEA must file a notice of claim under the GIA "*and* a 'civil

---

[10] Utah Code Ann. § 67-21-4(1)(a) (2015).

[11] *Id.* § 67-21-4(b)(ii).

[12] 243 P.3d 500 (Utah Ct. App. 2010).

action'—i.e., a district court complaint—within 180 days" of the alleged retaliatory action.[13] This requires a "claimant to file a GIA notice early enough in the 180-day period to allow the governmental entity 60 days to evaluate the claim so that, at the elapse of that time, the claimant can file a civil action before the 180 days have passed."[14] Thus, the court rejected the plaintiff's argument that the filing of a notice under the GIA tolled the statute of limitations under the UPPEA.[15] Plaintiff's claim suffers from the same deficiency as the one in *Thorpe*.

Plaintiff also argues that the statute of limitations should be tolled by equitable estoppel or the discovery rule. Essentially, Plaintiff argues that because she failed to understand and appreciate the statute of limitations, Defendants should be estopped from enforcing it. This argument finds no support in law or logic.

Estoppel has the following elements: "(1) an admission, statement, or act inconsistent with the claim afterwards asserted, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act."[16] The Utah Supreme Court has stated that "courts must be cautious in applying equitable estoppel against the State."[17] "Accordingly, estoppel is applied against the state only 'if necessary to prevent manifest injustice, and the

---

[13] *Id.* at 505.

[14] *Id.*

[15] The UPPEA and GIA have since been amended.

[16] *Celebrity Club, Inc. v. Utah Liquor Control Comm'n*, 602 P.2d 689, 694 (Utah 1979) (citation omitted).

[17] *Monarrez v. Utah Dep't of Transp.*, 368 P.3d 846, 860 (Utah 2016) (quoting *Celebrity Club, Inc.*, 602 P.2d at 694).

exercise of governmental powers will not be impaired as a result.'"[18] Further, "[t]he few cases in which Utah courts have permitted estoppel against the government have involved very specific written representations."[19]

Here, there is no admission, statement, or act that is inconsistent with Defendants asserting a statute of limitations defense. As required by case law, there is no "specific, written representation directly related to that issue."[20] Plaintiff attempts to overcome this by citing to the requirement in the UPPEA to exhaust administrative remedies. However, as set forth above, that provision has no application here. Plaintiff also points to the language of the UPPEA to support her belief that the statute of limitations would be tolled while she pursed administrative remedies. However, Plaintiff's failure to understand the statute of limitations does not equate to a representation from Defendants that is inconsistent with their assertion of a statute of limitations defense. Therefore, Plaintiff's equitable estoppel argument fails.

Plaintiff next argues that the discovery rule tolls the statute of limitations. The fraudulent concealment branch of the equitable discovery rule may operate to toll a statute of limitations "where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct."[21] Here, Davis' termination was not concealed from her. Thus, she knew the facts underlying her claim on the date of her termination and she fails to allege anything to support her claim that Defendants somehow concealed those facts. Rather, her discovery rule argument is again premised on her misunderstanding of the statute of limitations.

---

[18] *Id.* (quoting *Celebrity Club, Inc.*, 602 P.2d at 694).

[19] *Id.* (quoting *Anderson v. Pub. Serv. Comm'n of Utah*, 839 P.2d 822, 827 (Utah 1992)).

[20] *Id.* at 860–61.

[21] *Russell Packard Dev., Inc. v. Carson*, 108 P.3d 741, 747 (Utah 2005).

6

"The limitations period is postponed only by belated discovery of key facts and not by delayed discovery of legal theories."[22] Thus, the fact that Plaintiff misunderstood the statute of limitations does not result in tolling.

While "concealment includes non-disclosure where there is a duty to disclose,"[23] Plaintiff has pointed to no such duty. Plaintiff relies on a provision of the UPPEA that requires employers to "post notices and use other appropriate means to keep employees informed of their protections and obligations under this chapter."[24] However, nothing in this provision imposes a duty on Defendants to inform Plaintiff of the relevant statute of limitations or to correct her misunderstanding. Therefore, this argument fails and Plaintiff Davis' UPPEA claim must be dismissed with prejudice.

C. CONTRACT AND RELATED CLAIMS

   1. *Second Cause of Action*

The second cause of action is brought by Wilson against the State of Utah and the University of Utah and is for breach of contract and detrimental reliance. As discussed, the State of Utah must be dismissed, leaving this claim as against the University.

Plaintiff Wilson's first employment contract contained the following statement:

I accept this offer of employment and understand that my initial six months of employment is probationary. Throughout probation, my employment is "at will" and can be terminated for business reasons substantiated by the hiring department, subject to review and approval by the Division of Human Resources.[25]

---

[22] *Anderson v. Dean Witter Reynolds, Inc.*, 920 P.2d 575, 579 (Utah Ct. App. 1996)

[23] *Bistline v. Parker*, 918 F.3d 849, 884 (10th Cir. 2019).

[24] Utah Code Ann. § 67-21-9(1) (2015).

[25] Docket No. 4-20, at 9.

Wilson alleges that the University breached this provision by terminating him. He also alleges that he relied upon this provision to his detriment by leaving his previous employment to take this position with the University.

Plaintiff contends that his employment contract provided that he could *only* be fired for "business reasons" and he asserts that he was not terminated for "business reasons," but rather in retaliation for whistleblowing activity. However, Plaintiffs' employment contract does not state that he could only be fired for business reasons. Rather, his employment contract makes clear that he remained an at will employee during his probation period. "An at-will employment arrangement allows either the employer or the employee to terminate the employment for any reason, or no reason at all, at any time."[26] As Wilson was terminated during his probation period, this claim fails.

Turning next to Plaintiff's promissory estoppel/detrimental reliance claim, in Utah, the elements of promissory estoppel are: (1) the promisee acted with prudence and in reasonable reliance on a promise made by the promisor; (2) the promisor knew that the promisee had relied on the promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person; (3) the promisor was aware of all material facts; and (4) the promisee relied on the promise and the reliance resulted in a loss to the promise.[27]

---

[26] *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 400 (Utah 1998).

[27] *J.R. Simplot Co. v. Sales King Int'l, Inc.*, 17 P.3d 1100, 1107 (Utah 2000).

Here, Plaintiff's claim fails because any reliance on an alleged promise would have been unreasonable in light of the terms of the employment contract, which clearly indicated that Plaintiff was an at-will employee.[28]  Therefore, this claim fails.

2. *Third Cause of Action*

Plaintiffs' third cause of action is for breach of contract and detrimental reliance/promissory estoppel.  These claims arise out statements from John Nixon, the Chief Administrative Officer and Chief Financial Officer for the University of Utah.  Plaintiffs allege they met with Nixon and provided him details of their concerns.  Plaintiffs allege that Nixon assured them that their employment was secure and that they would not be retaliated against by being fired.  Plaintiffs continued to be concerned and Davis reached out to Nixon to report that Steven Corbato, Deputy Chief Information Officer for UIT, was altering Wilson's reporting line and probation period, which she feared would lead to Wilson's termination.  In response, Nixon stated that he had talked to Corbato and "asked him to hold off in doing anything with you [Davis] or Barry [Wilson] until we get the new CIO on board."[29]  Once that occurred, "we will evaluate where your shop should reside.  Until then, I need to ask you to continue working with the IT team within the org structure they have established."[30]  Wilson was terminated about one month later, on December 15, 2014, before the installation of a new CIO.

---

[28] *See Darr v. Town of Telluride, Colo.*, 495 F.3d 1243, 1260 (10th Cir. 2007); *see also Kuhl v. Wells Fargo Bank, N.A.*, 281 P.3d 716, 727 (Wyo. 2012) ("A valid at-will employment disclaimer, however, defeats an employee's promissory estoppel claim.").

[29] Docket No. 4-2, at 103.

[30] *Id.*

9

Plaintiffs' allegations reveal two distinct promises: (1) that Plaintiffs would not be terminated because of their whistleblowing activities; and (2) that Corbato would "hold off in doing anything" with Plaintiffs until a new CIO was chosen.

As to the first promise, Defendants argue that there was insufficient consideration because it was merely a promise to comply with the requirements of the UPPEA. "It is well recognized that the performance of a duty imposed by law is insufficient consideration to support a contract."[31] Thus, Nixon's alleged promise to comply with the statutory obligations contained in the UPPEA by not retaliating against Plaintiffs is insufficient consideration.

As to the second alleged promise, it is simply too vague to convey a clear and unequivocal intention to relinquish the right to terminate at will.[32] Without more, the statement that Nixon has asked Corbato "to hold off in doing anything" is insufficient. Further, while Plaintiffs contend that Nixon's statement was a promise that Plaintiffs would not be terminated until a new CIO was in place, they read too much into Nixon's statement. Rather, he stated only that he asked Corbato to hold off doing anything with Plaintiffs until a new CIO was in place. This statement was in response to Plaintiffs' concerns about Corbato altering the Wilson's reporting line and probationary period and, when put into proper context, does not constitute a promise not to terminate Plaintiffs until a new CIO was in place.[33]

---

[31] *Prows v. State*, 822 P.2d 764, 768 (Utah 1991); *see also Diamanti v. Aubert*, 251 P. 373, 374 (Utah 1926) (recognizing "general rule that the performance of, or promise to perform, an existing legal obligation is not a sufficient consideration for a promise given in return")

[32] *Sanderson v. First Sec. Leasing Co.*, 844 P.2d 303, 307 (Utah 1992).

[33] It is worth noting that Davis was terminated after a new CIO was in place. Thus, to the extent Plaintiffs had a valid claim, Davis' claim would still be subject to dismissal.

Turning next to Plaintiffs' promissory estoppel/detrimental reliance claim, in Utah, the elements of promissory estoppel are: (1) the promisee acted with prudence and in reasonable reliance on a promise made by the promisor; (2) the promisor knew that the promisee had relied on the promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person; (3) the promisor was aware of all material facts; and (4) the promisee relied on the promise and the reliance resulted in a loss to the promise.[34]

Plaintiffs' claim fails. As to the final element, Plaintiffs allege in a conclusory fashion that because of the promises made, they did not seek further employment protection or seek new employment. However, there are no factual averments to support these conclusory allegations. Therefore, this claim is subject to dismissal.

In addition to arguing that these claims fail on the merits, Defendants also argue that these claims are preempted by the UPPEA. Because these claims fail on the merits, the Court need not resolve this issue.

    *3.    Fourth Cause of Action*

Defendants next seek dismissal of Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing. Because Plaintiffs' contract claims fail, their implied covenant claim fails as well. Therefore, this claim will be dismissed.

*4.    Fifth Cause of Action*

Plaintiffs' fifth cause of action relates to Wilson's second period of employment. Wilson was hired as an independent contractor in July 2015, but was terminated the following month, allegedly because of his previous whistleblowing activities. Plaintiff alleges this termination

---

[34] *J.R. Simplot Co.*, 17 P.3d at 1107.

breached his independent contractor agreement. However, there are no allegations that the University's ability to terminate Wilson was somehow limited. Plaintiffs have failed to provide the Court with a copy of the independent contractor agreement and have failed to provide any allegations related to the terms of that agreement. Without some information to suggest that Wilson was something other than an at-will employee, this claim fails.[35]

D.   CONSTITUTIONAL CLAIMS

Plaintiffs assert violations of the rights to free speech and free association, as well as deprivation of due process. Those claims are addressed below.

   *1.   State of Utah, University of Utah, and Official Capacity Claims*

Plaintiffs constitutional claims are asserted against all Defendants. The State of Utah, the University of Utah, and the individual Defendants in their official capacity seek dismissal because they are not "persons" under 42 U.S.C. § 1983.

Section 1983 provides a remedy against "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Only "persons," as that term has been defined by the courts, are subject to suit under § 1983. "Neither the state, nor a governmental entity that is an arm of the state for Eleventh Amendment purposes, nor a state

---

[35] *Johnson v. Morton Thiokol, Inc.,* 818 P.2d 997, 1000 (Utah 1991) ("In Utah, an employee hired for an indefinite period is presumed to be an employee at will who can be terminated for any reason whatsoever so long as the termination does not violate a state or federal statute.").

12

official who acts in his or her official capacity, is a 'person' within the meaning of § 1983."[36] Therefore, Plaintiffs' constitutional claims as against the State, the University, and the individual Defendants in their official capacity are dismissed.[37]

  2.  *Pleading Requirements for Individual Defendants*

In order to state a claim under 42 U.S.C. § 1983, a complaint must allege personal participation by the defendant.[38] Such personal participation must be alleged by showing an affirmative link between the defendant and the challenged conduct, either through the defendant's actual conduct or the defendant's acquiescence in a constitutional violation.[39] Thus, a complaint must "make clear exactly *who* is alleged to have done *what to whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state."[40] "[I]t is incumbent upon a plaintiff to 'identify *specific* actions taken by *particular* defendants' in order to make out a viable § 1983 . . . claim."[41]

Plaintiffs' constitutional claims are brought against all Defendants and are replete with references to broad groups like the University, UIT leadership, and UIT management. These allegations are insufficient. Moreover, as the Motion to Dismiss demonstrates, there are several individual Defendants that are not affirmatively linked to an alleged constitutional violation.

---

[36] *Harris v. Champion*, 51 F.3d 901, 905–06 (10th Cir. 1995).

[37] To the extent that Plaintiffs had valid claims for prospective injunctive relief, such claims may be asserted against the individual Defendants in their official capacity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989).

[38] *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976) .

[39] *Rizzo v. Goode*, 423 U.S. 362, 375 (1976); *Kite v. Kelley*, 546 F.2d 334, 337 (10th Cir. 1976).

[40] *Robbins v. Okla.*, 519 F.3d 1242, 1250 (10th Cir. 2008).

[41] *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998)).

Thus, Plaintiffs' constitutional claims are insufficiently pleaded and amendment is required. The Court will allow Plaintiffs an opportunity to plead their freedom of speech claim—the only claim that could potentially survive dismissal—with more particularity. Because of this, the Court declines to address Defendants' remaining arguments as to that claim at this time. Defendants remain free to reassert their arguments, if appropriate, upon the filing of an amended complaint.

### 4. *Freedom of Association*

Defendants also seek dismissal of Plaintiffs' freedom of association claim. Plaintiffs have failed to respond to this argument. Therefore, the Court will dismiss this claim.

### 5. *Due Process*

#### a. *Property Interest*

Plaintiffs first argue that they were deprived of a property interest without due process. The Due Process Clause of the Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property without due process of law."[42] "To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process."[43]

##### i. *Davis*

Defendants assume that Davis possessed a protected property interest. Thus, the issue becomes whether she was afforded an appropriate level of process.

---

[42] U.S. Const. amend. XIV, § 1.

[43] *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996) (citations and internal quotation marks omitted).

In *Cleveland Board of Education v. Loudermill*,[44] the Supreme Court held that "[a]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"[45] A full evidentiary hearing is not required.[46] But an individual "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."[47]

Here, Davis was given notice that her position was being terminated following a reorganization of UIT.[48] Davis was given notice of her appeal rights and timely filed an appeal.[49] Davis requested and received a committee hearing.[50] After the committee made the decision to uphold the elimination of Davis' position, she appealed to Ruth Watkins, Senior Vice President for Academic Affairs, who found no basis for overturning that decision.[51]

Plaintiff has failed to allege that the process she received was somehow deficient. Therefore, this claim must be dismissed.

---

[44] 470 U.S. 532 (1985).

[45] *Id.* at 542 (*quoting Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).

[46] *Id.* at 545.

[47] *Id.* at 546.

[48] Docket No. 4 ¶ 23, 73; *see also* Docket No. 4-1 at 7–8.

[49] Docket No. 4 ¶ 23; *see also* Docket No. 4-1, at 16.

[50] Docket No. 4-1, at 16–19

[51] *Id.* at 19.

### ii. Wilson

"When a plaintiff claims a property interest in [his] job, [courts] ask whether [he] had 'a legitimate expectation of continuing employment.'"[52] "At-will employees lack a property interest in continued employment."[53] Since Wilson was an at-will employee, as set forth above, he lacks a property interest in continued employment and his due process claim fails.

### b. Liberty Interest

Plaintiffs also claim that Defendants impugned their good names, reputations, honor, and integrity. "A public employee has a liberty interest in his good name and reputation as they relate to his continued employment."[54]

> The government infringes upon that interest when: (1) it makes a statement that impugn[s] the good name, reputation, honor, or integrity of the employee; (2) the statement is false; (3) the statement is made during the course of termination *and* foreclose[s] other employment opportunities; and (4) the statement is published, in other words disclosed publicly.[55]

"These elements are not disjunctive, all must be satisfied to demonstrate deprivation of the liberty interest."[56]

Here, Plaintiffs have failed to adequately plead any of the elements of a liberty interest claim and failed to respond to Defendants' Motion to Dismiss on this claim. Therefore, it will be dismissed.

---

[52] *Eisenhour v. Weber Cty.*, 744 F.3d 1220,1232 (10th Cir. 2014).

[53] *Darr*, 495 F.3d at 1252.

[54] *McDonald v. Wise*, 769 F.3d 1202, 1212 (10th Cir. 2014)

[55] *Id.* (alterations in original) (quotation marks omitted).

[56] *Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994).

IV. MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

Plaintiffs seek leave to add Wilson to the first claim for relief under the UPPEA.

Generally, once a responsive pleading is filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave."[57] Federal Rule of Civil Procedure 15(a) specifies that "[t]he court should freely give leave when justice so requires."[58] The Supreme Court has indicated that leave sought should be given unless "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment"[59] is present. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."[60]

Here, amendment would be futile because Wilson's claim, like that of Davis, is untimely and would be subject to dismissal. Wilson's employment was terminated on December 15, 2014, and again on August 25, 2015. Plaintiffs did not bring suit until June 8, 2016, well after the 180-day limitations period. For the same reasons discussed above, Plaintiffs' arguments related to the statute of limitations are without merit. Therefore, this Motion will be denied.

---

[57] Fed. R. Civ. P. 15(a)(2).

[58] *Id.*

[59] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[60] *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'rs Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).

## V. CONCLUSION

It is therefore

ORDERED that Defendants' Motion to Dismiss (Docket No. 14) is GRANTED as set forth above. The Court will dismiss all of Plaintiffs' claims, except their freedom of speech claim. Plaintiffs are directed to file a Third Amended Complaint, which includes only that claim, within twenty-eight (28) days of this Order. The Third Amended Complaint must address the deficiencies identified in the Motion to Dismiss. It is further

ORDERED that Plaintiffs' Motion for Leave to File Third Amended Complaint (Docket No. 28) is DENIED.

The hearing set for July 16, 2019, is STRICKEN.

DATED this 8th day of July, 2019.

BY THE COURT:

_____
Ted Stewart
United States District Judge